Zachary P. Takos, Nevada Bar No. 11293
**TAKOS LAW GROUP, LTD.**
1980 Festival Plaza Drive, Suite 300
Las Vegas, NV 89135
Telephone: 702.856.4629
Email: zach@takoslaw.com

Jonathan O. Hafen, *admitted pro hac vice*
Chad S. Pehrson, *admitted pro hac vice*
Stephen C. Mouritsen, *pro hac vice pending*
**PARR BROWN GEE & LOVELESS**
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Tel: (801) 532-7840
Email:  jhafen@parrbrown.com
         cpehrson@parrbrown.com
         smouritsen@parrbrown

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
THE DISTRICT OF NEVADA

| | |
|---|---|
| AMERICAN PREPARATORY SCHOOLS, INC., a Utah Corporation, | Civil Case No: 2:20-cv-01205-JAD-NJK |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| NEVADA CHARTER ACADEMIES d/b/a AMERICAN PREPARATORY ACADEMY—LAS VEGAS, a Nevada Corporation, LEE IGLODY, an individual, JONATHAN GARDNER, an individual, MELISSA ST. JEAN, an individual, ERNIE ELLIOT, an individual, and CANDYCE FARTHING, an individual, RACHELLE HULET, an individual, | |
| Defendants. | |

1

Plaintiff, American Preparatory Schools, Inc., hereby complains against Defendants, American Preparatory Academy—Las Vegas, Lee Iglody, Jon Gardner, Melissa St. Jean, Ernie Elliot, and Candyce Farthing (the "Board Defendants"), and Rachelle Hulet (collectively, the "Defendants") as follows:

## PARTIES, JURISDICTION & VENUE

1.      American Preparatory Schools, Inc. ("APS"), is a Utah corporation with its principal place of business in Salt Lake County, Utah.

2.      Nevada Charter Academies d/b/a American Preparatory Academy—Las Vegas ("APA-LV"), is a Nevada corporation with its principal place of business in Clark County, Nevada.

3.      Lee Iglody is a member of the board of APA-LV and an individual residing in Nevada.

4.      Jon Gardner is a member of the board of APA-LV and an individual residing in Nevada.

5.      Melissa St. Jean is a member of the board of APA-LV and an individual residing in Nevada.

6.      Ernie Elliot is a member of the board of APA-LV and an individual residing in Nevada.

7.      Candyce Farthing is a member of the board of APA-LV and an individual residing in Nevada.

8.      Rachelle Hulet is a former employee of APS and an individual residing in Nevada.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction for state law claims exists under 28 U.S.C. § 1367.

10.     This Court also has subjection-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the parties are completely diverse, and the amount in controversy exceeds $75,000.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that the claim arose in this District and the individual Defendants reside in this district, and the principal place of business of APA-LV is located in this District.

## GENERAL ALLEGATIONS

12.     APS is a charter school management company that was created in December 2008 to establish an effective model to manage more than one charter school campus.

13.     APS currently manages seven charter school campuses—six in Utah, and one in Nevada. An additional campus is currently under construction.

14.     APA-LV is one of the charter schools managed by APS.

15.     Prior to 2017, the APA-LV school charter was held by a "governing board" made up of Nevada citizens, and was not a separate legal entity.

16.     Nevada Charter Academies ("NCA") was incorporated as a Nevada Non-Profit in 2017.

17.     NCA filed a fictitious business name with Clark County, Nevada on October 23, 2017, called "American Preparatory Academy – Las Vegas".

18.     APA-LV was founded by Lee Iglody, Jonathan Gardner, Paris Bayardo, Lindy DesJarlais, and Tamara Stuart (the "Committee to for the School", which became the school's Governing Board)

19.     Rachelle Hulet was not involved in the founding of the school, except that she was hired by APS and worked primarily to help bring APS's business to Nevada.

20.     David Sharette wrote the charter application on behalf of the Committee and Carolyn Sharette worked to establish the school. Rachelle was in fact an employee of APS as of January of 2014 and has been paid well over $400,000 in salary and bonuses, plus health benefits and all other benefits the same as every APS employee. Ms. Hulet reported to Carolyn Sharette, her supervisor, and reported to the board at Carolyn's request as her employer/supervisor.

21.     APA-LV filed its first Form 990 Tax Return for the tax year 2017.

## APS's Intellectual Property

22.    "AMERICAN PREPARATORY ACADEMY" is a registered trademark belonging to APS and protected by U.S. Registration No. 4,566,619.

23.    The founding documents of the charter school included the hiring of APS and the use of the APA name, in conjunction with the use of all of APS' curriculum, methods, forms, and all intellectual property of APS. All of these things were listed in the charter application and APA-LV's charter was granted conditional on their contract with APS; hence the necessity for a charter amendment to purportedly sever ties with APS as the EMO. APS did not enter into a Management Agreement with a Charter School which was expressly using the name "American Preparatory Academy – Las Vegas", a Charter School was named "American Preparatory Academy – Las Vegas" because of their relationship with APS as their EMO. They only held the name APA-LV because of their relationship to APS.

24.    APS's intellectual property also includes certain commercial property, including the Emergency Response Plan, Learning Progress charts, coaching or evaluation forms, 180-day plans, digital presentations, learning plans, Character Development curriculum, Mission Statement, training videos, hiring forms, Google classrooms, Builder Awards/Reading University Awards—pins, all curriculum developed under the supervision of APS staff, including: Secondary WIKI:, https://smap.atlassian.net/, Science mini-Wikis, student data templates, teacher templates, "formative" content, and Google classroom content..

25.    APS's commercial property also includes the following:

   a. The Ambassador Curriculum—The Ambassador Curriculum is APS's character development program, which teaches APS's students to be upstanding citizens in society. The creation of the program was overseen by APS's employee, Catherine Findlay.

   b. The APS Policy Manual—The APS Policy Manual contains all of the established policies and procedure that are used to operate APS schools and is created and maintained by the Compliance Department (namely Lisa Brunson and Kate York, both APS employees);

   c. The Secondary Curriculum—The Secondary Curriculum contains lesson plans, videos, worksheets and classroom PowerPoints for every subject;

     d.   Teacher Training Materials and Presentations—Teacher training presentations are PowerPoints developed by Carolyn Sharette, Jen Walstad, and other APS staff used to train teachers during APS's teacher training summer weeks. They include philosophy, manners, and methods training;

     e.   The Elementary Curriculum—The Elementary Curriculum includes reading lessons, math lessons, science and history videos, and reading lists and worksheets for each subject, created by APA teachers and APS directors;

     f.   The APS Crest—The crest is the visual representation of APS's values in the Secondary school, created by Alyson Sharette on behalf of APS;

     g.   The APA Star Logo—The start logo was created by parent Brad Dowdle around 2013.[1]

26. The materials in the paragraphs above constitute APS's commercial property (the "Commercial Property"). With the exception of the APA Start Logo, they were developed by APS employees for APS during their employment at APS.

27. The materials, the Commercial Property, belongs to APS.

28. APA-LV cannot be permitted to use APS's commercial property in a competing venture and must be compelled to return it.

29. At the time their purported separation, Defendants changed administrative permissions to APS's server which contains APS's Commercial Property. Thus, even if the Agreement is still in effect, APA-LV demonstrated an intent to make use of APS's Commercial Property and to deprive APS of its use. The administrative permissions that were improperly changed allowed them to copy documents from APS's server onto their personal computers, and restrict other's access to such documents.

30. In addition, on July 1, 2020, Rachelle Hulet confiscated APS computers containing APS's Commercial Property and refused to deliver them to Michelle Sharette upon request. In fact, Rachelle stated that she would not hand over the APS computers which were issued to APS

---

[1] APS has submitted applications to register this Commercial Property for copyright protection with the United States Copyright Office and intends to seek leave to further amend this First Amended Complaint to add claims for copyright infringement once these registrations are complete; American Preparatory Academy Ambassador Curriculum: Case No. 1-904766481; Operational/Policy Manual for Operation of Charter School: Case No. 1-9050941311; Secondary Curriculum for Charter School: Case No. 1-90510800661; Teacher Training Presentations: Case No. 1-9051080837; Charter School Elementary Grades Curriculum: Case No. 1-9051081237; American Preparatory Academy Crest: Case No. 1-9051159615; American Preparatory Academy Logo (the Star Logo): Case No. 1-9051159821.

employees until the data on them was copied. This data included APS Commercial Property. When the computers were returned, some of the data on the computers had been erased.

### The Charter School Management Agreement

31.     In May 2013, APS entered into the Charter School Management Agreement (the "Management Agreement") with APA-LV.

32.     The Management Agreement made clear that APS was to leverage its "resources and expertise in operating and managing academic and business operations" to "provide a program inclusive of academic and business operations to fulfill its charter obligations."

33.     The Management Agreement further provided that "[i]n exchange for the services outlined in this Agreement, APA-LV agrees to compensate APS $936 per student (amended annually), based on enrollment on the student count used by the State of Nevada to calculate reimbursement to APA-LV."

### Term of the Management Agreement

34.     The Management Agreement defined the "Term" of the Agreement as follows: "This agreement shall commence July l, 2013 for a term of 2 years - subject to material and fee revision on or around June 30th of each year, by mutual consent." That is, the "term" of the Management Agreement is two years, subject to an annual review of fees that may be conducted by mutual consent.

### Renewal by Mutual Consent and Course of Dealing

35.     The Management Agreement provides for renewal or extension, stating: "A renewal or extension to the term of the Agreement may be made with consent of both parties and is subject to written notice no later than 30 days prior to the termination date." The Management Agreement can thus be renewed by mutual consent.

36.     No written consent was provided by either party in 2015. However, the parties continued to conduct their business as if the Management Agreement had been renewed. APA-LV continued to pay management fees to APS, and APS continued to provide management services to APA-LV.

37.     Similarly, no written consent was provided by either party in 2019. However, the parties continued to conduct their business as if the Management Agreement had been renewed. APA-LV continued to pay management fees to APS, and APS continued to provide management services to APA-LV.

38.     The only year in which written notice of renewal was provided was 2017, when a belated written consent was sent to APS by Defendant, Lee Iglody, Chairman of the Board of APA-LV, on September 28, 2017.

39.     Notwithstanding this absence of express written consent to renew the Management Agreement, since 2013 the parties continued to conduct their business as if the Management Agreement were in place. APA-LV continued to pay management fees to APS, and APS continued to provide management services to APA-LV.

40.     Pursuant to Paragraph 1.2 of the Management Agreement, the Agreement was thus renewed for a two-year term in June 2019. This term will expire on July 1, 2021.

**Renewal at the Time of Charter Renewal**

41.     The Management Agreement also provides for automatic renewal: "Upon Charter renewal with the Authorizer [*i.e.*, State Public Charter School Authority], the length of the term of this Agreement automatically renews."

42.     The renewal of the Charter for APA-LV was approved at the January 31, 2020, meeting of the SPCSA.

43.     Melissa Mackedon, chair of the SPCSA, signed the renewed Charter for APA-LV on June 2, 2020.

44.     Pursuant to Paragraph 1.3 of the Management Agreement, the Agreement was thus renewed for a two-year term in June 2020. This term will expire on July 1, 2022.

**Termination of the Management Agreement**

45.     The Management Agreement provides that the Agreement may only be terminated for cause prior to the end of its term with 30 days' notice (*see* Exhibit A ¶ 3.1). The Management Agreement defines "Cause" as follows:

- 3.1.1 Gross negligence, fraud or criminal acts, whether or not successfully prosecuted. 30 days advance written notice is not required for termination under provision 3.1.1

- 3.1.2 A willful or negligent material breach of the terms of the Charter or this Agreement, accompanied by a failure to remedy a breach within *60* days written notice to the party in breach of contract.

- 3.1.3 A legislative, administrative or judicial act, after all possible appeals, of the federal or state government, or the courts, resulting in a final judgment or enactment revoking or invalidating the Charter, or the lawful enforcement of the provisions of this Agreement.

- 3.1.4 A legislative, administrative or judicial act, after all possible appeals, of the federal or state government, or the courts, resulting in a final judgment or enactment which has a material adverse effect on APS's ability to perform the provisions of this Agreement.

- 3.1.5 Termination of the Agreement as provided under this provision will not relieve APA-LV of any obligations for payments outstanding to APS on the effective date of termination.

46.     To date, there has been no serious allegation of gross negligence, fraud, criminal acts, willful negligence, nor breach of the terms of the Management Agreement.

47.     No notice of termination has been provided. No such notice could have been provided because none of the conditions of Paragraph 3 of the Management Agreement have been satisfied.

**Attempt to Establish a Competing Venture**

48.     As noted above, the Management Agreement was renewed on July 1, 2019, pursuant to Paragraph 1.2, without written consent by either party. APS and APA-LV continued to operate pursuant to the terms of the Management Agreement.

49.     At that time, Defendant and APS employee Rachelle Hulet had a conversation with Carolyn Sharette—APS's founder. Ms. Hulet was instrumental in establishing an APS charter

school in Las Vegas. She served as an administrative director of the Las Vegas campus. She was employed by APS in 2014 and has been employed by APS since that time. APS highly values her contribution to APS and the Las Vegas school.

50. Over the past 2 years, there has been a deterioration in the relationship between Ms. Hulet and APS, as well as some other troubling developments at APA-LV. The school's board appears to have questions regarding APS' performance, and the elementary school's star rating fell from a 5 to a 2 in the spring of 2019.

51. In July 2019, Ms. Hulet communicated to Ms. Sharette that she desired to have her own management company that would take over the APA-LV contract from APS. She suggested that Ms. Sharette could serve as a consultant for this effort.

52. This proposal was shocking to Ms. Sharette, constituting as it did an employee purporting to offer to take away her employer's contract with the APA-LV, after her employer had committed extraordinary resources of time and money into establishing the Las Vegas campus.

53. Not only did Ms. Hulet propose to take over APS's management contract, but to continue to use APS's intellectual property, including APS's trademarks, as well as all aspects of its developed school model, inclusive of proprietary curriculum, and programs.

54. Ms. Hulet thus proposed to takeover APS's brand in Las Vegas, and to relegate the founder and owner of APS to a position of "consultant."

55. Ms. Hulet also insisted that she had "the confidence of the board," which Ms. Sharette interpreted as a threat in that Ms. Hulet was stating that she believed she had the power to influence the board of APA-LV to make this change, regardless of whether Ms. Sharette agreed to it or not.

56. Ms. Sharette was astonished by this exchange. Though not prepared to address the proposal in its entirety, Ms. Sharette clearly communicated that she had no intention to relinquish her company to Ms. Hulet, especially since, during Ms. Hulet's tenure as administrator, the school had just fallen from a 5-star rating to a 2-star rating, and because Mrs. Hulet lacked the credentials for a position she sought.

57.   In that same meeting, Ms. Hulet asked for a larger raise in salary, which was not approved.

58.   Ms. Sharette had observed that under Ms. Hulet's leadership and direction, some members of the APA-LV team were not focusing on fidelity to the APS model, and as such the failures were beginning to manifest.

59.   Instead of working to improve the performance of the Las Vegas campus, Ms. Hulet was looking to increase her bottom line by taking over Ms. Sharette's business.

60.   In January 2020, Ms. Hulet once again expressed her desire to take over the contract with the APA-LV board, utilizing APS as a "consultant" role. Ms. Sharette communicated to Ms. Hulet that her views were not aligned with APS's vision, and declined to entertain Ms. Hulet's proposal.

61.   Ms. Sharette was convinced that Ms. Hulet's interest in taking over the APS contract with APA-LV and the management of the charter school was improving her own financial compensation.

**Recent Board Action**

62.   On June 8, 2020, APA-LV published its Notice of Public Meeting which alerted APS that the Governing Board was going to discuss and potentially vote on the "non-renewal of the APS contract."

63.   On June 11, 2020, during the APA-LV Board Meeting, Board Member Jonathan Gardner stated that the board had initiated a forensic audit and that APS was simply a vendor and the board had the ability to decide if the contract is necessary. If it was a contract that the board had decided to let expire, then the board would not renew it, and should move to terminate the contract for cause through performance and forensic audits.

64.   To the extent the contract referenced here is the Management Agreement, it is not "expiring." The Management Agreement was renewed pursuant to Paragraph 1.3 of the

Management Agreement with the renewal of the Charter on June 2, 2020, and expires at the earliest on July 1, 2022.[2]

65.    In any event, this sequence of events makes clear that the board is seeking a pretextual basis for terminating the Management Agreement.

66.    On June 18, 2020, APA-LV hired Rachelle Hulet as the new Executive Director of APA-LV.

67.    In between August 2019 and the spring 2020, APA-LV financed a $17,000,000 school building, representing to the lender (bondholders) that the school and its expansion would continue to be managed by APS. That representation was a key factor for their landlord's decision to enter into the $17,000,000 debt and have NCA as a tenant.[3] The suggestion that APA-LV was "openly" considering a change in management in 2019 is untrue. Had the bondholders or the landlord known that they were seriously considering a change, they never would have followed through with the financing.

68.    In addition, in January 2020, the school submitted a renewal of their charter with the SPCSA, where they again represented that they would continue to be managed by APS.

69.    APA-LV retained Steve Canavero and the WestEd Team to assist with fact gathering and analysis to assist in finding a basis for termination. The WestEd review did not start until after the board's purported June 11, 2020, vote to "not renew" the contract, demonstrating that the Board was searching for a cause to terminate, but had not found one.

70.    APS has provided copious information to APA-LV. Jon Gardner expressed at the June 11, 2020, meeting that David Sharette provided the board with "too much" information. In the same meeting, Melissa St. Jean held up a binder of deliverables put together by APS and the entire board admitted to not reviewing the deliverables because it was too much information.

71.    APS never recommended any teacher salary cuts.

---

[2] In addition, even in the absence of Paragraph 1.3, the Management Agreement would have been renewed in July 2019 for a two-year term, pursuant to Paragraph 1.2, and would not expire until July 1, 2021, at the earliest.

[3] Nevada Charter Academies ("NCA") was incorporated as a Nevada Non-Profit in 2017. NCA filed a fictitious business name with Clark County, Nevada on October 23, 2017, called "American Preparatory Academy – Las Vegas."

72.     Prior to the June 11, 2020, meeting APA-LV had not requested information from APS, which information APS may have been willing to provide to NCA had they reached out.

73.     APS provided the employees that they were contractually obligated to provide to NCA (Admin Director, Elementary Director, Secondary Director, Academic Director, Ops Director), and in addition employed many people that they were not contractually obligated to employ. APS also provides services at the district office through APS personnel. Services that NCA took advantage of such as payroll services, character development curriculum and deployment, accounting, compliance, expansion, and others.

74.     The fees paid to APS go to APS staff placed at the APA-LV school. They do not "leave the state." If the Management Agreement is terminated, the school will save $2,300,000 in fees but will incur $2,300,000 in employment costs, since virtually all of APS' fees go to pay employees working directly at or for the APA-LV school.

**Use of APS's Intellectual Property**

75.     On June 18, 2020, APS terminated Rachelle Hulet's employment.

76.     An examination of Ms. Hulet's computer reveals that its memory was fully deleted prior to her termination from APS.

77.     Upon information and belief, APA-LV intends to continue to use APS's intellectual property including its registered trademark, and confidential information in a competing business.

78.     Defendants have already set up an infringing website, https://apalasvegas.org/, which trades on Plaintiff's AMERICAN PREPARATORY ACADEMY Mark, which is protected by U.S. Registration No. 4,566,619.

79.     The website designates Defendants' new school as "APA Las Vegas." Not only is this designation obviously indicative of Plaintiff's AMERICAN PREPARATORY ACADEMY Mark, but the designation "APALV," "American Preparatory Academy—Las Vegas Campus," and "APA-Las Vegas" have been in use by Plaintiff for years (as obviously indicative of Plaintiff's mark) and have been featured on Plaintiff's website during that time.[4]

---

[4] *See e.g.*, https://vegas.americanprep.org/ (last visited June 24, 2020); *see also*
https://www.americanprep.org/vegas2/ (last visited June 24, 2020); *see* https://vegas.americanprep.org/apa-lv-

80.     On information and belief, since the filing of the initial complaint in this matter, Defendants have changed the name of the school from "APA Las Vegas" to "Amplus Academy." "Amplus Academy" is derivative from American Preparatory Academy. Use of the mark "Amplus Academy" would allow APA-LV to use the acronym "APA" and continue to the use the websites "apalasvegas.org." Given the context of the purported separation between APS and APA-LV, Defendants' revised mark is still likely to cause confusion for the potential customers of APS.

81.     On information and belief, Defendants are representing to parents and students that nothing about the school will change and that the new school will offer the same curriculum and training as it did prior to the purported separation from APS.

82.     On information and belief, Defendants intend to use APS's Commercial Property, including curriculum and training materials, rather than develop their own curriculum and training materials.

### Proposed Motion Not to Renew

83.     On June 23, Rebecca Feiden, Executive Director of the Nevada State Public Charter School Authority ("SPCSA") submitted a proposed agenda item for a meeting of the SPCSA Board on June 26, 2020. The memorandum stated:

> At its June 11, 2020 board meeting, American Preparatory Academy Las Vegas' (APA-LV) board unanimously voted not to renew its contract with its educational management organization, American Preparatory Schools (APS). Pursuant to the school's charter school contract and NAC 388A.575, such action requires approval by the Authority. SPCSA staff has been monitoring these developments at APA-LV, including attending recent APA-LV board meetings, and recommends that the Authority approve APA-LV's nonrenewal of its contract with APS. Correspondence related to this issue is included along with this memorandum as supporting material for this agenda item.

> ***Proposed Motion****: Move that the SPCSA approve American Preparatory Academy Las Vegas' nonrenewal of its contract with American Preparatory Schools and direct APA Las Vegas to work with SPCSA staff to outline specific changes to the operations, academics and finances that will be required to operate as a stand-alone charter school.*

governing-board/# (last visited June 24, 2020) (the "BIO" of both Defendants Jon Gardner and Ernie Elliott make reference to their involvement with "APA-Las Vegas").

84.     This memorandum ignores the plain language of the Management Agreement, which makes clear that renewal occurs automatically upon the renewal of the charter. That charter was renewed on June 2, 2020, meaning that the two-year term for the Management Agreement is extended to July 1, 2022. The APA-LV Board did not have authority to vote not to renew the Management Agreement, and their decision to do so is of no legal effect. If the APA-LV Board wishes to terminate the Management Agreement, they must do so for cause, and provide at least 30-days' notice, so that the parties can adjudicate the allegations for cause removal.

85.     Because the Board acted unlawfully in voting not to "renew" a contract that had already been renewed, the SPCSA Board has no statutory authority to approve the APA-LV Board's unlawful actions.

86.     Moreover, members of the SPCSA expressly stated that they did not did not think it was appropriate for the SPCSA to make a determination on the parties' contract dispute.  The SPCSA attorney clarified that the vote only allows the school to seek a separation from their EMO, but that it does not allow SPCSA that the separation itself is lawful. And SPCSA Members clarified that they as an Authority are not making any findings of fact regarding the ability of the school to legally separate from the APS.

87.     In light of APA-LV's recent actions, APS has begun to explore the possibility of establishing a private school in Las Vegas. APS should not be required to compete with a school that uses its Commercial Property and infringes upon its trademark.

88.     APA-LV has never terminated the Agreement and has never provided the requisite 30-days notice to terminate the Agreement.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Declaratory Judgment**
(APA-LV and Board Defendants)

89.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

90.     Plaintiff seeks a declaration that:

- Pursuant to Paragraph 1.2 and the parties' course of dealing, the Management Agreement was renewed for a two-year term on July 1, 2019, and does not expire until July 1, 2021, at the earliest, and that all rights and obligations of the Agreement are in force until that time.

- Pursuant to Paragraph 1.3, the Management Agreement was renewed for a two-year term on July 1, 2020, and does not expire until July 1, 2022, at the earliest, and that all rights and obligations of the Agreement are in force until that time.

- Defendants cannot terminate the Management Agreement without cause and without 30-days advanced written notice of any purported cause.

- The APA-LV Board did not have authority to vote not to "renew" the Management Agreement, and their decision to do so is of no legal effect, because the Management Agreement was automatically renewed on June 2, 2020.

- Defendants have no cause to terminate the contract with APS because APS has not acted with gross negligence, nor engaged in fraud, criminal acts, or willful negligence; nor has APS breached of the terms of the Management Agreement. As such, the Management Agreement cannot be terminated without APS's consent.

- No legislative, administrative or judicial act, has taken place that would constitute "cause" for termination pursuant to Paragraphs 3.1.3-4 of the Management Agreement. As such, the Management Agreement cannot be terminated without APS's consent.

91. Because of Defendants' unlawful efforts to find a pretext for terminating the Management Agreement, Plaintiff also respectfully requests that Defendants' be enjoined from terminating the Agreement until any claim of "for clause" termination can be adjudicated.

## SECOND CAUSE OF ACTION
### Breach of Contract
(APA-LV and the Board Defendants)

92. Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

93. The Management Agreement entered into by APS and APA-LV constitutes a valid, binding, and enforceable contract.

94. APS has performed its duties and obligations under the Management Agreement.

15

95.     APA-LV and the Board Defendants have breached the Management Agreement by seeking to terminate the Agreement without cause, as defined by Paragraph 3 of the Agreement, and by refusing to acknowledge the renewal of the Agreement through July 1, 2022.

96.     The acts and omissions of APA-LV and the Board Defendants have resulted in a material breach of the Agreements.

97.     APA-LV and the Board Defendants have damaged APS through their breach in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Breach of the Covenant of Good Faith and Fair Dealing**
(APA-LV and Board Defendants)

98.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

99.     The Management Agreement entered into by APS and APA-LV constitutes a valid, binding, and enforceable contract.

100.     APS has performed its duties and obligations under the Management Agreement.

101.     APA-LV and the Board Defendants have breached their implied covenant of good faith and fair dealing by seeking to terminate the Agreement without cause, as defined by Paragraph 3 of the Agreement, and by refusing to acknowledge the renewal of the Agreement through July 1, 2022.

102.     The acts and omissions of APA-LV and the Board Defendants have materially denied APS of the benefits of its bargain.

103.     APA-LV and the Board Defendants have damaged APS through their breach of their implied covenant of good faith and fair dealing in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**Unjust Enrichment (in the alternative)**
(against all Defendants)

104.     Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

105.    In the alternative, Plaintiff avers that Defendants received a benefit from APS through the collection and use of APS's intellectual property, including APS's trademark, and confidential information.

106.    Defendants were and are aware that APS conferred a benefit on them from the knowledge and use of intellectual property, including APS's trademark, and confidential information.

107.    Defendants have been enriched by gaining access to and using intellectual property, including APS's trademark, and confidential information.

108.    Defendants accepted or retained those benefits without payment of its value.

109.    Under the circumstances, it would be inequitable if Defendants were permitted to retain that benefit without payment of its value.

110.    As a result of Defendants unjust enrichment, APS has been damaged in an amount to be proven at trial.

111.    APS is entitled to a judgment in its favor, and against the Defendants, including preliminary and permanent injunction preventing Defendants from using intellectual property, including APS's trademark, and confidential information, as well as an award of damages sustained by APS as a direct result of the Defendants' misappropriation and use of its intellectual property, including APS's trademark, and confidential information.

**FIFTH CAUSE OF ACTION**
**Conversion**
(against all Defendants)

112.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

113.    Defendants' conduct as described above constitutes a wrongful and deliberate interference with APS's possession and ownership of its intellectual property, including APS's trademark, and confidential information.

114.    By reason of the Defendants' conversion of Plaintiff's property, Plaintiff has sustained, and will sustain in the future, damages including replacement costs and lost profits from the loss of the use of its property.

115.    APS is entitled to a judgment in its favor, and against the Defendants, including preliminary and permanent injunction preventing Defendants from using intellectual property, including APS's trademark, and confidential information, as well as an award of damages sustained by APS as a direct result of the Defendants' conversion and use of its intellectual property, including APS's trademark, and confidential information.

**SIXTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
(against Rachelle Hulet)

116.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

117.    At all times relevant to this dispute, Rachelle Hulet was an employee of APS.

118.    Under Nevada law, employees owe a fiduciary duty—including a duty of loyalty—to their employers.

119.    Ms. Hulet's fiduciary duty to APS required her to act for the benefit of APS upon matters within the scope of that relationship, which included her administration of the Las Vegas Campus.

120.    Ms. Hulet breached that duty by working secretly with the board of APA-LV board to undermine APS's Management Agreement, and to create a charter school under her management, but relying on APS's model and intellectual property.

121.    APS has been damaged by Ms. Hulet's breach in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Intentional Interference with Contractual Relations**
(against Rachelle Hulet)

122.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

123.    The Management Agreement entered into by APS and APA-LV constitutes a valid, binding, and enforceable contract.

124.    APS has performed its duties and obligations under the Management Agreement.

125.   Upon information and belief, Ms. Hulet intentionally interfered with APS's contractual relationship with APA-LV, by working secretly with APA-LV and the Board Defendants to supply them with APS's intellectual property, to establish a competing venture to compete with APS, and to encourage APA-LV to terminate the Agreement without cause, as defined by Paragraph 3 of the Agreement, and to refuse to acknowledge the renewal of the Agreement through July 1, 2022.

126.   APS has been damaged by Ms. Hulet's intentional interference in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
Conspiracy
(against all Defendants)

127.   Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

128.   Upon information and belief, Defendants had a meeting of the minds to accomplish unlawful objectives, including but not limited to, terminating the Agreement without cause, as defined by Paragraph 3 of the Agreement, refusing to acknowledge the renewal of the Agreement through July 1, 2022, and using APS's intellectual property to establish a competing venture.

129.   APS has been damaged by Defendants conduct in an amount to be proven at trial.

### NINTH CAUSE OF ACTION
Infringement of APS's Registered Trademarks, 15 U.S.C. §§ 1114(1), 1116, and 1117
(all Defendants)

130.   Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

131.   APS is the owner of valid and subsisting United States Trademark Registration No. 4,566,619.

132.   Defendants have adopted and began using a mark that is identical to APS's AMERICAN PREPARATORY ACADEMY Mark, specifically on their website, and in communications with potential customers.  This use of APS's trademark constitutes trademark infringement, unfair competition, and intentional efforts to deceive and confuse consumers

133.   APS has used this trademark in commerce in Utah and Nevada.

134.   As a result of its widespread, continuous and exclusive use of the AMERICAN PREPARATORY ACADEMY Mark to identify itself as the source of its services and associated business, APS owns valid and subsisting federal statutory and common law rights to the AMERICAN PREPARATROY ACADEMY Mark.

135.   The AMERICAN PREPARATORY ACADEMY Mark is distinctive to both the consuming public and in APS's trade.

136.   Defendants have infringed and are infringing APS's trademark rights in a manner that is likely to make potential customers of APS believe Defendants' commercial activities are authorized, endorsed, or sponsored by the APS, or that Defendants are in some way affiliated with or sponsored by the Company.

137.   As a result of APS's expenditures and efforts, the AMERICAN PREPARATORY ACADEMY Mark has come to signify the high quality of the services designated by the AMERICAN PREPARATORY ACADEMY Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to APS.

138.   Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' commercial activities and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' commercial activities originate from, are associated or affiliated with, or otherwise authorized by APS.

139.   Upon information and belief, Defendants' acts are willful with the deliberate intent to deceive consumers into thinking that Defendants' correspondence comes from APS, or in other words cause confusion and deception.

140.   Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to APS and to its valuable reputation and goodwill with the consuming public for which APS has no adequate remedy at law.

141.    By reason of the foregoing, APS hereby asserts a claim against Defendants for injunctive and monetary relief pursuant to 15 U.S.C. Sections 1114(1), 1116, and 1117 with respect to Defendants' infringement of APS's trademark, Reg. No. 4,566,619.

### TENTH CAUSE OF ACTION
Common Law Trademark and Trade Name Infringement
(all Defendants)

142.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

143.    Plaintiff has used the AMERICAN PREPARATORY ACADEMY Mark for many years and therefore has service mark rights to it under the common law of the United States and of the State of Nevada.

144.    Defendants have used the AMERICAN PREPARATORY ACADEMY Mark in interstate commerce in a manner likely to cause confusion (and which has already caused actual confusion), mistake or deception, leading members of the public to believe falsely that Defendants' services are sponsored, endorsed, licensed, approved by, or in some way connected with APS, to the irreparable injury of APS and the public.

145.    In addition, or in the alternative, Defendants have used the AMERICAN PREPARATORY ACADEMY Mark in interstate commerce in a manner likely to cause confusion (and which has already caused actual confusion), mistake or deception, leading members of the public to believe falsely that Defendants' services and products are sponsored, endorsed, licensed, approved by, or in some way connected with APS, to the irreparable injury of APS and the public.

146.    Defendants have infringed and is willfully infringing the AMERICAN PREPARATORY ACADEMY Mark.

147.    Defendants' conduct has harmed and continues to harm APS's name and reputation and continues to cause confusion among members of the public.

148.    APS has been, is, and is likely to be irreparably damaged by such acts of infringement in an amount that cannot be determined without an accounting, and damage will continue unless the acts are enjoined by this Court.  APS has no adequate remedy at law.

149.    By reason of the foregoing, APS asserts a claim against Defendants for injunctive and monetary relief for trademark and trade name infringement under the common law of the State of Nevada.

**ELEVENTH CAUSE OF ACTION**
Federal Unfair Competition/False Designation of Origin/False Advertising
15 U.S.C. § 1125(a)
(all Defendants)

150.    Plaintiff realleges and incorporates the preceding paragraphs as though fully set forth herein.

151.    Defendants' unauthorized use in commerce of the APS Mark and APS's Commercial Property as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' commercial solicitations, and is likely to cause consumers to believe, contrary to fact, that Defendants' commercial activities are authorized, endorsed, or sponsored by APS, or that Defendants are in some way affiliated with or sponsored by APS.

152.    Defendants' unauthorized use in commerce of the APS Mark and APS's Commercial Property as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

153.    Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

154.    Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

155.    Defendants' conduct is causing immediate and irreparable harm and injury to APS, and to its goodwill and reputation, and will continue to both damage APS and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

156.    APS is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs

of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**TWELFTH CAUSE OF ACTION**
Misappropriation of Commercial Property under Nevada Common Law
(all Defendants)

157.    Plaintiff has invested significant time, effort, and money in developing intellectual property, including, without limitation, the Plaintiff's Commercial Property as defined above.

158.    Plaintiff's Commercial Property is of actual and potential commercial value to Plaintiff.

159.    Defendant's wrongful use of Plaintiff's Commercial Property, undertaken without authority from Plaintiff, deprived Plaintiff, at least in part, of the full commercial value of Plaintiff's Commercial Property.

160.    Plaintiff has sustained damages as a direct and proximate result of Defendant's acts as alleged herein, and Defendant is liable to Plaintiff for such damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      Actual damages in an amount to be proven at trial;

B.      Treble, enhanced, or other applicable damages as provided by law;

C.      Disgorgement of all profits, commissions, fees, compensation, transferred funds, or other money and assets improperly obtained;

D.      Prejudgment and post judgment interest pursuant to statutory and common law;

E.      Punitive damages for acts undertaken willfully, maliciously or with a knowing or reckless indifference toward, and disregard of, the rights of Plaintiff;

F.      Plaintiffs' taxable costs and expenses of litigation, including but not limited to attorneys' fees, pursuant to statutory and common law; and

G.      For such further equitable or other relief as the Court deems appropriate under the circumstances.

H.      Permanent injunction enjoining the Defendants, their officers, shareholders, agents, servants, employees, attorneys, successors and assigns, subsidiaries, affiliated companies or

23

entities, all those in privity with same, and all those in active concert or participation who receive actual notice of the judgment: (1) preventing the use of APS's trademark or any confusingly similar mark, and (2) preventing APA-LV from terminating the Management Agreement without cause and until such a time as any purported cause may be adjudicated, and (3) preventing APA-LV from using any of APS's Commercial Property, and (4) requiring APA-LV to return all of APS's Commercial Property.

DATED this 29th day of July, 2020.

TAKOS LAW GROUP, LTD.

_____*/s/ Zachary P. Takos*_____
Zachary P. Takos, Esq., Nevada Bar No. 11293
1980 Festival Plaza Drive, Suite 300
Las Vegas, NV 89135

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I am 18 years of age or older, and not a party to this action. My business address is 1980 Festival Plaza Drive, Suite 300, Las Vegas, Nevada 89135. On the date below, I served the foregoing **FIRST AMENDED COMPLAINT** as follows:

☒  via electronic service pursuant to Fed. R. Civ. P. 5(b) and Section IV of the District of Nevada Electronic Filing Procedures; and/or

☐  By U.S. Mail by depositing a copy of the foregoing document in an envelope(s) in the mail at Las Vegas, Nevada. The envelope(s) were mailed with postage thereon fully prepaid to the following:

DATED this 29th day of July, 2020.

_____/s/Zachary P. Takos_____
TAKOS LAW GROUP, LTD.